## MICOU'S EXECUTORS *v.* STACY et als.

The vendor of a contingent interest in lands who warrants title, as to himself and those claiming under him, and who takes a counter letter conditioned that the vendees will convey to him one-third of the land that may be confirmed to them after adjusting the claims of certain settlers on the land, has not such a title as will authorize him to be recognised as a co-proprietor in a suit for partition, between parties claiming by title from his vendees.

The holder of such a counter letter would have no right as against his vendees, when their title to a portion of the land had been confirmed, only by compromise with parties claiming under an assignment from him prior to the date of the counter letter.

The registry in the mortgage book of such a counter letter, even if it be regarded as a title or conveyance, would be no notice to a purchaser.

APPEAL from the District Court of Concordia, *Cooley,* J.
*Hamner & Hays,* for *Bringier,* appellant. *Hynes, Stacy & Sparrow, in pro. per.*

SPOFFORD, J. (BUCHANAN, J. and OGDEN, J. absent). The District Judge did not err in rejecting the pretensions of *Louis Bringier* to a share in the partition.

To have allowed him a definite share in the lands on their proceeds, under the pleadings as between him and *Stacy* and *Sparrow,* would have been to recognise in him a sufficient legal title to sustain a petitory action against them as adverse possessors.

He has produced no such title.

His pretended title he styles a counter letter from *Curry* and *Garland*, to whom he sold all the claim he might have to the Bringier tract in 1841.

It turned out that he had no claim at all, for he had surrendered all the interest he had to his creditors in 1827, and in 1828 it was adjudicated to *Isaac Lambert, William Brothers*, and *Jonah Bastable*.

Their claims have been asserted contradictorily with *Curry* and *Garland*, or their successors, and all with a certain degree of success. The heirs of *Mooney* who succeeded to the rights of *Lambert & Brothers*, after instituting legal proceedings, compromised with *Curry & Garland*, and procured a share of the land. The heirs of *Bastable*, by the judgment of our predecessors (reported in 5 An. 419) recovered an undivided sixth of the *Bringier* tract, subject to certain deductions for expenses common to all the co-proprietors. They would have recovered the other sixth, but the recorded interest of *Garland* had passed into the hands of *Stacy*, whose good faith protected him.

Now, in the sale of his contingent claim to *Curry* and *Garland* in 1841, the vendor inserted the following clause : " this sale is made without any warranty on the part of Mr. *Bringier*, except against himself, his heirs, *and those claiming under him*." The sale was for the express consideration of $5,000.

Referring to the counter letter we find that *Curry* and *Garland* stipulated that when the title should be confirmed, and the claims of certain settlers adjusted, they would convey and relinquish to the said *Bringier* one-third of the land that should remain.

Suppose, for a moment, that *Curry* and *Garland* were the defendants instead of *Stacy* and *Sparrow*. Could *Bringier*, under these facts be permitted to say, "I am the owner of one undivided third of these lands in common with you, by virtue of this counter letter?" They would reply, "we have, after great trouble, expense and litigation, got a title to a part of the *Bringier* tract ; you sold us your claim, as an inchoate claim, really subsisting in you and not alienated at the time ; you warranted us that we should be disturbed by no one claiming under you ; you have broken your warranty ; your sale to us was absolutely null ; the thing belonged to other persons to whom you had previously assigned it yourself; those persons have disturbed us ; after we had paid you $5,000 for a claim you did not own, and spent our time and money in getting a confirmed title, your assignees stepped in and took a considerable part of the land from us ; they would have taken it all but for a timely compromise, which we made for our own protection, and not for your benefit, because you violated your contract with us."

This defence, as the evidence stands, would effectually bar *Bringier* from claiming a specific performance of the promise to recover one-third of the lands, even were he litigating his rights with the original parties to the counter letter.

That instrument is not an absolute title to anything ; it is not translative of dominion over anything. It is a conditional promise to convey in the future, and refers to a deed from thepromisee, which itself conveyed only an inchoate and contingent claim, but with a warranty against disturbance from his own assigns; which has been falsified.

The most ample notice of such an instrument brought home to *Stacy* and *Sparrow* could not enable *Bringier* to assume the position of a co-proprietor with them, for they hold under titles of the highest dignity.

If *Bringier* had any rights growing out of his dealings with *Curry* and *Garland*, he should have asserted them contradictorily with those parties.

MICOU<br>v.<br>STACY.

It may be added that if the counter letter could possibly be regarded as a title or conveyance, it was improperly recorded in the mortgage book, and such a registry would not operate as notice.

Nor could the fact that a mortgage certificate was read at the sale when *Stacy* purchased, in which a loose reference was made to a conveyance said to have been executed by *Curry* and *Garland*, of one-third of the land, without stating to whom, be considered as giving *Stacy* legal notice, that *Louis Bringier* was an owner of an undivided third, so as to put him in the position of a purchaser in bad faith, especially as *Stacy* bought under a judicial mortgage recorded before the registry of the counter letter in the mortgage book, as shown by the certificate read at the sale. The judgment is affirmed with costs.

Re-hearing refused.